JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff Mitchell Lambert (appellant) appeals the court's granting defendant-appellee MetroHealth Medical Center's (MetroHealth) motions in limine and motion for a directed verdict in appellant's medical malpractice claim. After reviewing the facts of the case and pertinent law, we affirm.
 I. {¶ 2} On December 6, 2000, appellant underwent a cardiac catheterization and radiofrequency ablation at MetroHealth to address heart problems he was experiencing. During the outpatient procedure, the catheter's sheath fractured, and the tip became lodged in appellant's lung. On December 11, MetroHealth performed a second surgical procedure, successfully recovering the tip.
 {¶ 3} On November 22, 2004, appellant filed a multicount complaint against multiple defendants, alleging, inter alia, the following: medical negligence against MetroHealth; medical negligence against the individual doctor who performed the initial procedure; and product liability and breach of warranty against the catheter manufacturers. Subsequently, appellant settled his products liability claim and voluntarily dismissed his claim against the doctor, leaving MetroHealth as the sole defendant in the action.
 {¶ 4} During the discovery process, appellant retained a cardiologist, Dr. C. William Balke, to serve as an expert witness at trial. Subsequent to the submission of Dr. Balke's expert report, MetroHealth filed two motions in limine: first, to exclude Dr. Balke's testimony because his report failed to establish the essential elements of a medical malpractice claim; and second, to prohibit appellant from litigating using a res ipsa loquitur theory, based on insufficient evidence. On January 30, 2006, the court granted both of MetroHealth's motions, and the case proceeded to trial. However, after appellant's opening statement, the court granted a directed verdict in favor of MetroHealth.
 II. {¶ 5} In his first assignment of error, appellant argues that "the trial court committed prejudicial error when it granted Defendant's Motion in Limine to Exclude Plaintiff's Expert from Testifying at Trial." Specifically, appellant argues that although Dr. Balke was not prepared to testify about the proximate cause element of medical malpractice, he should have been allowed to testify regarding other items addressed in his expert report. In other words, appellant claims it was error to exclude Dr. Balke's entire testimony; rather, the court should have granted MetroHealth's motion only in part.
 {¶ 6} To succeed in most[1] medical malpractice claims, the plaintiff is required to present expert testimony demonstrating the following: 1) the acceptable medical standard of care; 2) the defendant's breach of that standard; and 3) that the breach proximately caused the plaintiff's injuries. West v. Cleveland ClinicFoundation (June 15, 2000), Cuyahoga App. No. 77183, citing Bruni v.Tatsumi (1976), 46 Ohio St.2d 127. Furthermore, in Becker v. Lake CountyMemorial Hosp. West (1990), 53 Ohio St.3d 202, 207, the Ohio Supreme Court held that in malpractice cases "[m]edical experts must render opinions based upon probabilities, not merely in terms of possibilities."
 {¶ 7} In the instant case, appellant submitted Dr. Balke's expert report pursuant to Loc.R. 21.1, which states in part that the expert "will not be permitted to testify or provide opinions on issues not raised in his report." Dr. Balke's report states the following in the summary:
 "As noted above, it is impossible to reconstruct or understand the events leading to the shearing of the tip of the sheath and its migration through the right side of the heart to the lower portions of the left lung from the records provided. The two major possible explanations range from equipment failure (i.e., sheath malfunction) to operator error. In addition, there are many irregularities in Mr. Lambert's care that clearly represent care below the acceptable standard. The foregoing opinions are all asserted to a reasonable degree of medical certainty."
 {¶ 8} Appellant has conceded that the "many irregularities" in his care, such as alleged poor recordkeeping, being given a medication he was allergic to, and failure to provide cardiac risk assessment and modification, are not related to whether MetroHealth committed malpractice when the tip of the catheter became lodged in his lung. Given this, Dr. Balke's report consisted of the following potential testimonial evidence — that with a reasonable degree of medical certainty, it was possible that the incident occurred because of MetroHealth's negligence. Dr. Balke was unwilling to rule out a defective product as causing the injury, and he was unwilling to say that it was probable the injury was caused by MetroHealth falling below the standard of care during the procedure.
 {¶ 9} In response to appellant's expert report, MetroHealth filed a motion in limine to preclude Dr. Balke from testifying at trial, arguing that "Dr. Balke's expert report did not contain any opinion that a deviation from the standard of care by Defendant Metro or its employees was the proximate cause of Mr. Lambert's alleged injury."
 {¶ 10} A motion in limine is a "pretrial request that certain inadmissible evidence not be referred to or offered at trial." Black's Law Dictionary (7th Ed.) 1033. We review a court's determination of the admissibility of evidence for an abuse of discretion. O'Brien v. Angley (1980), 63 Ohio St.2d 159.
 {¶ 11} In the instant case, there is no question that Dr. Balke is, in general, qualified to testify as an expert witness about cardiology matters. However, Evid.R. 702(C) states that testimony must be "reliable scientific, technical, or other specialized information," for it to be presented by an expert witness. We established that to be "reliable" in a medical malpractice case, testimony must reflect that malpractice probably occurred, not just possibly occurred. See, also, Stinson v.England (1994), 69 Ohio St.3d 451, 455 (holding that "[i]nasmuch as the expression of probability is a condition precedent to the admissibility of expert opinion regarding causation, it relates to the competence of such evidence and not its weight").
 {¶ 12} In the instant case, the following colloquy took place on the record before appellant's opening statement:
 The Court: "I want you to make this proffer, or I invite you to make a proffer; that if permitted to testify, he would say that the physician for the defendant company committed malpractice. Can you make that proffer?"
Appellant's "I don't want to. I don't know if I want to counsel:put it in that terminology, your Honor."
 {¶ 13} Thus, as to the specific facts of the instant case, Dr. Balke's opinion was not reliable because it was based on speculation and conjecture with regard to MetroHealth falling below the acceptable standard of care and the causation of appellant's injury. Furthermore, appellant offers no legal authority to support his argument that Dr. Balke's testimony should have been merely limited rather than eliminated. Accordingly, we cannot find that the court abused its discretion by excluding Dr. Balke's testimony, and appellant's first assignment of error is overruled.
 III. {¶ 14} In his second assignment of error, appellant argues that "the trial court committed prejudicial error when it granted Defendant's Motion in Limine to Preclude Plaintiff's Use of Evidence of Res Ipsa Loquitur." Specifically, appellant argues that if Dr. Balke had testified, he would have been able to establish a prima facie case of res ipsa loquitur. Although we ruled that the court did not err in precluding Dr. Balke's testimony purporting to establish negligence, we realize that not having expert testimony is necessarily fatal to appellant's case. Therefore, we address this assignment of error as it relates to Dr. Balke's testimony purporting to establish res ipsa loquitur.
 {¶ 15} Res ipsa loquitur is a Latin term meaning "the thing speaks for itself." Black's Law Dictionary (7th Ed.) 1311. Res ipsa loquitur is not a substantive rule of law; rather, it is an evidentiary theory which permits the jury to infer negligence when the following apply: 1) The instrument causing the injury was under the exclusive management and control of the defendant during the time in question; and 2) If the defendant had used ordinary care under ordinary circumstances, the injury would not have occurred. Becker, supra, 53 Ohio St.3d 202.
 "Whether sufficient evidence has been adduced at trial to warrant application of the rule is a question of law to be determined initially by the trial court, subject to review upon appeal. It is prejudicial error for the trial court to direct a verdict for defendant at the close of plaintiff's evidence where the evidence presented warrants the application of the rule."
Hake v. George Wiedemann Brewing Co. (1970), 23 Ohio St.2d 65, 67.
 {¶ 16} A plaintiff arguing res ipsa loquitur in a medical malpractice case is required to present expert medical testimony that the injury would not have occurred but for the defendant's negligence, unless the negligence would be obvious to a layman. Deskins v. Jaramillo (Oct. 8, 1998), Cuyahoga App. No. 72824. See, also, Morgan v. Children'sHospital (1985), 18 Ohio St.3d 185; Coleman v. Mullins (July 16, 1997), Scioto App. No. 96CA2462 (holding that "the doctrine of res ipsa loquitur may not be applied if the cause of the patient's injury is unknown"). As noted earlier, the standard of care for administering a heart catheter, and thus whether a medical professional fell below that standard of care, is not something that is common knowledge outside of the medical profession and requires expert testimony to establish. See Fn. 1.
 {¶ 17} In the instant case, appellant argues that had Dr. Balke testified as an expert witness, he would have been able to establish the two elements required to prove res ipsa loquitur. We disagree. Assuming arguendo that Dr. Balke's testimony was admissible under Evid.R. 702, nothing in his expert report states that he would have been able to establish the second prong of the res ipsa loquitur test. He would have testified that, but for MetroHealth's negligence or the defective product, appellant's injury would not have occurred. Similar to our reasoning in appellant's first assignment of error, this evidence is simply not enough. Appellant was unable to offer any evidence or testimony that negligence probably occurred in his case. In fact, the expert report that appellant submitted relating to the product liability arm of this case opined that the catheter was indeed defective. It is equally as possible that the defective catheter was the only cause of appellant's injury, as it is possible that a combination of the defective catheter and MetroHealth's falling below the standard of care caused his injury. However, what is possible is not necessarily probable, and lacking reliable evidence of the probability of negligence is fatal to appellant's case.
 {¶ 18} Accordingly, the court did not err by granting MetroHealth's motion in limine excluding appellant's res ipsa loquitur evidence, and his second assignment of error is overruled.
 IV. {¶ 19} In his third and final assignment of error, appellant argues that "the trial court committed prejudicial error when it granted Defendant's Motion for a Directed Verdict after Opening Statement."
 {¶ 20} Pursuant to Civ.R. 50(A)(1), a party may move for a directed verdict following the opening statement of opposing counsel. To sustain such a motion, "* * * it must be clear that all the facts expected to be proved, and those that have been stated, do not constitute a cause of action or a defense, and the statement must be liberally construed in favor of the party against whom the motion has been made."Brinkmoeller v. Wilson (1975), 41 Ohio St.2d 223 at syllabus. Furthermore, courts should use great caution in granting a directed verdict on an opening statement, doing so "only in those cases where a party completely fails to propose relevant evidence on an essential element of that party's case." Howard v. Columbus Products (1992), 82 Ohio App.3d 129, 136.
 {¶ 21} In the instant case, appellant's opening statement was made without reference to an expert medical witness. The only mention of MetroHealth falling below the standard of care, and thus causing appellant's injury, was as follows: "Mitchell and Karina Lambert will testify that the Defendant Metro were [sic] negligent. * * * That they breached the standard of care. * * * And this was a substantial factor in bringing about the harm that I've already described." Appellant and his wife are not qualified to establish the breach and causation elements in a medical malpractice claim centering around a heart catheter. Because appellant offered nothing else, his opening statement does not support any cause of action against MetroHealth, and the court did not err in granting the hospital's motion for a directed verdict. Appellant's final assignment of error is overruled.
Judgment affirmed.
It is ordered that appellees recover from appellants costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] Under Ohio law, in medical malpractice claims where the medical procedures and terminology are within the common knowledge and understanding of the jury, no expert is required to testify. SeeDarnell v. Eastman (1970), 23 Ohio St.2d 13. In the instant case, the procedure in question is a cardiac catheterization, and it is clear that expert testimony is required. See, also, Evid.R. 702(A).
MARY EILEEN KILBANE, J., CONCURS;
COLLEEN CONWAY COONEY, P.J., CONCURS WITH SEPARATE CONCURRING OPINION